Kerry Van WELCH,
Petitioner-Appellant,

v.

Robert H. BUTLER, Sr., Warden,
Louisiana, State Penitentiary, et
al., Respondents-Appellees.

No. 86–3881.

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1988.

Rehearing and Rehearing En Banc
Denied Feb. 24, 1988.

Arthur Abercrombie, Baton Rouge, La., (Court-appointed), for petitioner-appellant.

Kerry V. Welch, pro se.

Kay Kirkpatrick, Asst. Dist. Atty., Baton Rouge, La., for respondents-appellees.

Before SNEED,* REAVLEY, and JOHNSON, Circuit Judges.

SNEED, Circuit Judge:

Kerry Van Welch appeals the district court's rejection of his habeas corpus petition. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

In April 1977, Marshall Carruth was found murdered in Baker, Louisiana. The murder remained unsolved until 1982. In

* Circuit Judge of the Ninth Circuit, sitting by    designation.

the summer of 1982, Kerry Van Welch told his estranged wife Barbara that he had killed a man. He had told her this once before, in 1980, but she had dismissed it at the time as just "talking big." After the second conversation, however, she became worried and told her father about the claimed murder. Her father relayed the information to a probation officer, who in turn talked to the Baker City Police Department.

Baker Police Officers Bourgoyne and Funderburk asked Barbara Welch if she would tape her telephone conversations with her husband and, if possible, get him to talk about the murder. She consented, and in August 1982 the police recorded two conversations between the Welches. During the second conversation, Kerry Welch admitted killing Carruth.

In September 1982, Bourgoyne and Funderburk asked Welch to come to the police station for questioning. They advised him of his *Miranda* rights. He initially denied any involvement in the Carruth murder. After the police informed him of the existence of the tapes of his conversations, he said that they might as well shoot him because he wasn't going to spend the rest of his life in prison.

At this point the officers left Welch, and another officer, Stan Easley, went in. Easley, a professed born-again Christian, had listened to the tapes. In the course of his conversations with his wife, Welch had expressed fear that God would never forgive him for the murder. Easley apparently was concerned that Welch misunderstood the nature of divine forgiveness. Upon entering the room, he immediately identified himself as a police officer. Easley and Welch discussed forgiveness and salvation and prayed together for about three hours. During this time, Welch made incriminating statements.

After the prayer session, Bourgoyne asked Easley whether Welch had confessed. Easley said that he had not asked Welch anything like that. Bourgoyne then asked Welch whether he would make a statement, and Welch made an oral statement in which he admitted to the killing.

Later, Welch apologized to his father-in-law, and expressed a desire to apologize to the victim's family.

At Welch's trial, the court refused to admit the taped conversations between Welch and his wife in reliance upon Louisiana's husband-wife privilege, La.Rev.Stat. Ann. 15:461 (West 1981). Over Welch's objection, and after holding an evidentiary hearing, the court did admit Welch's incriminating statements made during and after the prayer session. In April 1983, Welch was convicted of first degree murder and sentenced to life imprisonment without possibility of parole.

After exhausting his state remedies, Welch brought this habeas case in the Middle District of Louisiana. The district court referred the petition to a federal magistrate to determine whether a plenary hearing was required. The magistrate recommended against habeas relief without conducting an evidentiary hearing. The district court denied Welch's petition, and adopted the magistrate's report as the court's opinion. Welch appealed to this court.

## II.

## JURISDICTION

The district court's jurisdiction rested on 28 U.S.C. § 2254 (1982). This court's jurisdiction rests on 28 U.S.C. § 2253 (1982) and 28 U.S.C. § 1291 (1982).

## III.

## DISCUSSION

On appeal, Welch argues that the inculpatory statements he made should have been excluded (1) because they resulted from the allegedly illegal recording of his conversations with his wife, and (2) because they resulted from the allegedly unconstitutional prayer session with Officer Easley.

### A. *The Telephone Conversations*

Welch argues that the police violated the law in recording his telephone conversations with his wife, that the inculpatory

statements admitted at trial were the result of his being confronted with the tape recording of the conversations, and that the trial court therefore should have suppressed those statements as "fruit of the poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

Although Welch does not explicitly identify the source of the exclusionary rule he invokes, there are three possible sources: (1) a state law exclusionary rule; (2) a federal statutory law exclusionary rule; and (3) an exclusionary rule derived from the Constitution and created by the Supreme Court. We will examine each in turn.

At the outset, we note that Welch does not allege a violation of his Fourth Amendment rights. In fact, he claims only that the police violated three statutes: (1) Louisiana's spousal privilege, La.Rev.Stat.Ann. § 15:461 (West 1981); (2) Louisiana's prohibition against intercepting a communication without the consent of a party to the communication, La.Rev.Stat.Ann. § 15:1303(C)(3) (West Supp. 1987); and (3) the similar federal prohibition in 18 U.S.C. § 2511(2)(c) (1982 & Supp. IV 1986).

■ In reviewing a habeas petition, we are limited to determining whether the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (1982 & Supp. IV 1986). Therefore, we may not examine a claim that state law required the exclusion of the statements.

■ Federal law prohibits "a person acting under color of state law" from intercepting or disclosing telephone communications unless "such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c) (1982). Welch argues that the police violated this statute, and that the fruit of this violation should have been suppressed. Al-

though he invokes Fourth Amendment principles, he also mentions 18 U.S.C. § 2515 (1982), which states:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court ... if the disclosure of that information would be in violation of this chapter.

Welch alleges that the police coerced his wife to allow them to record the conversations, which, if true, would invoke § 2515's bar to the use of the fruit of the conversations.

The state trial court and court of appeals both addressed the question of Barbara Welch's consent, in construing the very similar provisions of Louisiana's wiretapping law.[1] The state trial court heard extensive testimony from the police officers and from Barbara Welch on the subject of her consent, and concluded that she voluntarily agreed to the wiretap. The state appellate court said that "the preponderance of the evidence clearly demonstrates that Barbara's participation was voluntary." *State v. Welch,* 448 So.2d 705, 711 (La.Ct.App.1984). Whether we review these determinations as an issue of fact or as a mixed question of fact and law, we find that the trial court's findings of fact are fairly supported by the record. *See* 28 U.S.C. § 2254(d)(8) (1982). Here, the state court's conclusion that Barbara Welch acted voluntarily was based on observations of the demeanor of the witness. We cannot say that the decision to credit the testimony of the police officers over that of Barbara Welch was not fairly supported by the record. We hold, therefore, that the police did not violate § 2511 in intercepting the phone conversations, and that therefore § 2515 does not apply to the statements that resulted from the interception.

---

1. Louisiana law tracks federal law very closely in its provisions regulating wiretapping. Its provisions forbidding the use of the fruit of illegal wiretaps, La.Rev.Stat.Ann. § 15:1307 (West Supp.1987), and allowing police to inter-

cept communications with the consent of one of the parties, La.Rev.Stat.Ann. § 15:1303(C)(3) (West Supp.1987), are almost identical to the parallel federal provisions.

■ In addition to statutory exclusion clauses like § 2515, there is the "fruit of the poisonous tree" exclusionary rule created by the Supreme Court. It applies primarily to violations of the Fourth, Fifth, and Sixth Amendments, although the Court has not explicitly limited its scope to constitutional violations. *See Nix v. Williams*, 467 U.S. 431, 442–43, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984) ("The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections.").

The problem Welch confronts is that there is no "poisonous tree" in this case. He does not allege a violation of his Fourth Amendment rights. In a conclusory fashion he asserts that his Fifth Amendment right against self-incrimination was violated by the police officers' confronting him with the tape of the conversations. This claim is frivolous. *See Johnson v. Hall*, 605 F.2d 577, 582 (1st Cir.1979) ("Confrontation with incriminating evidence does not amount to coercion."). And, as noted above, the police did not violate federal law in taping the conversations. Therefore, the exclusionary rule does not apply to the evidence that resulted from that recording.

### B. *The Prayer Session*

Welch puts forward two arguments for excluding the statements that resulted from the prayer meeting between Welch and Easley. First, he argues that Louisiana's priest-penitent privilege, La.Rev.Stat. Ann. § 15:477 (West 1981), bars the use of all communications made by Welch to Easley. We repeat, in reviewing a habeas petition we may not examine whether a state court has acted according to its state's law. 28 U.S.C. § 2254(a) (1982).

■ Second, Welch argues that the police violated his Fifth and Fourteenth Amendments' due process rights by coercing him to confess. The coercion, Welch alleges, was the use of his religious beliefs with respect to salvation, etc. employed by the police in setting up and bringing to pass the prayer session. Welch says that the inculpatory statements which resulted from the prayer session therefore should have been excluded.

Although religious speculation about the "voluntariness" of yielding to the will of God or of submitting to teaching that advocates so yielding has its place, it is not relevant to the issue before us. That issue is whether the confession was "voluntary" within the meaning of the Constitution's Due Process clauses. The state so found that it was. That does not foreclose the issue, however. The ultimate question of " 'voluntariness' is a legal question meriting independent consideration in a federal habeas corpus proceeding." *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985).

To hold that the inculpatory statements were made voluntarily, "we must conclude that he made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him. The burden of proving facts which would lead to an opposite conclusion is on the habeas corpus applicant." *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir.1980) (en banc).

There can be no doubt that Welch's confession was not the product of will overborne by the police. One does not have to be devout to accept the fact that Welch was concerned about his salvation and about divine forgiveness. However, this concern existed before his conversations with Easley. At most, the police set up a situation that allowed Welch to focus for some time on those concerns with a fellow Christian in the hope that his desire to be saved would lead him to confess. What coercion that existed was sacred, not profane.

The district court's denial of Welch's habeas petition is AFFIRMED.