**Ignacio CUEVAS, Petitioner,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. H–89–1577.**

United States District Court, S.D. Texas, Houston Division.

May 23, 1990.

Bill White, Staff Counsel for Inmates, Texas Dept. of Corrections, Huntsville, Tex., William E. Gray, Houston, Tex., for petitioner.

Bob Walt, Asst. Atty. Gen. of Texas, Austin, Tex., for respondent.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

Petitioner, currently in the custody of the Texas Department of Corrections, filed this federal habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner was indicted on September 4, 1974, for the felony offense of capital murder while attempting to escape from the Walls Unit of the Texas Department of Corrections in Huntsville, Texas.

Petitioner was tried by a jury in Harris County on three occasions. His first two convictions and death sentences were reversed by the Texas Court of Criminal Appeals due to errors in the jury selection process. *Cuevas v. State,* 575 S.W.2d 543 (Tex.Crim.App.1978); *Cuevas v. State,* 641 S.W.2d 558 (Tex.Crim.App.1982). In the third trial the jury returned a verdict of guilty of the offense charged and sentenced Petitioner to death. The Texas Court of Criminal Appeals affirmed on July 1, 1987. *Cuevas v. State,* 742 S.W.2d 331 (Tex.Crim.App.1987); *reh. denied,* Nov. 4, 1987, *cert. denied,* 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988).

Petitioner's execution date was initially scheduled for November 2, 1988. However, after Petitioner filed a petition for writ of habeas corpus with the trial court the execution date was changed to February 1, 1989 to allow the state adequate time for filing a response. Petitioner's execution was later reset for April 5, 1989 and then to May 9, 1989 so that all issues could be properly addressed. Upon review, the trial court concluded that the requested relief should be denied and the Court of Criminal Appeals affirmed. *Ex parte Cuevas,* Application No. 19,807–01.

A petition for writ of habeas corpus and motion for stay of execution was filed in this Court on May 3, 1989 and the following day a stay of execution was granted. This Court ordered Petitioner to file an amended petition on or before October 23, 1989 raising all claims currently known to him on pain of waiver. No amended petition was filed, no other habeas corpus petitions are pending and no petitions for writ of certiorari have been filed on Petitioner's behalf.

This Court is of the opinion Petitioner has exhausted all of his state remedies with respect to his current claims. Therefore, the Court will examine the merits of his application for writ of habeas corpus.

Petitioner contends he is entitled to relief for the following reasons:

1. *The exclusion of prospective juror Glenda Davis violated the Eighth and Fourteenth Amendments to the United States Constitution and the Texas Court of Criminal Appeals incorrectly applied*

*the Wainwright v. Witt standard to this claim.*

■ Petitioner alleges that his rights under the eighth and fourteenth amendments were violated when the trial court excused venire member Glenda Davis because of her personal feelings regarding the death penalty. In a separate claim Petitioner contends the Court of Criminal Appeals denied him due process by applying *ex post facto* the standards set forth in *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) rather than the standards in effect at the time of trial found in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).

Prospective juror Davis revealed during *voir dire* that she was opposed to the death penalty and could not find a person guilty knowing the death penalty was a possible punishment. According to Petitioner, Davis equivocated throughout questioning by the prosecutor and defense counsel and the record demonstrates that she was not so irrevocably opposed to the death penalty that she would automatically vote against it. Therefore, he claims, her elimination from the jury violated the requirements of *Witherspoon.*

The United States Supreme Court held in *Witherspoon* that when the state excuses for cause all prospective jurors who have religious or conscientious objections to the death penalty it violates Defendant's sixth and fourteenth amendment rights. The Court concluded that potential jurors can be subject to challenge based on their religious or conscientious scruples only if it is unquestionably apparent that they would vote against the death penalty automatically or that these views would prohibit them from making an unbiased determination on the question of guilt.

■ The *Witherspoon* decision was later clarified by the Supreme Court in *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) and in so doing, reaffirmed the standard for juror exclusion set forth in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). It is now clear that the standard for determining when a prospective juror may be excused for cause due to his views regarding capital punishment is "whether the juror's view would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Witt,* 469 U.S. at 424, 105 S.Ct. at 852. In essence *Witt* abolished the "automatic decision making" test found in *Witherspoon* and upheld the standard found in *Adams* which does not require a venire member's bias to be proven with "unmistakable clarity." *Id.*

■ Petitioner believes that by using the *Witt* standard the Court of Criminal Appeals made an *ex post facto* application of a criteria not in place at the time of trial. The United States Constitution expressly prohibits *ex post facto* laws which operate retroactively to make criminal an act which when done was not criminal or to aggravate a crime or increase the punishment therefore. *Cummings v. Missouri,* 4 Wall. 277, 325–26, 18 L.Ed. 356 (1867). However, if a procedural change occurs which neither increases punishment nor changes the elements of the offense nor alters the facts necessary to prove someone's guilt there is no *ex post facto* violation. *Weaver v. Graham,* 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17 (1981). If no substantive rights are affected there is no *ex post facto* violation even if the change works to the disadvantage of a defendant. *See Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925).

In this case the change set forth in *Witt* regarding the qualifications of jurors in capital cases is procedural, not substantive; therefore, no *ex post facto* violation occurred. In addition, although Davis did equivocate as to whether she could set aside her personal feelings, the record shows that after extensive questioning she concluded that in her opinion the death penalty was never an appropriate punishment and that she could not take the oath for a juror. Since it is "unmistakably clear" Davis would have voted in a way that the death penalty would not be imposed, even under the *Witherspoon* stan-

dard she would have been excused. Based on the above, Petitioner's *ex post facto* argument lacks merit.

A trial judge's predominate function in determining juror bias involves making a finding of credibility, the basis of which cannot be easily discerned from an appellate record. This Court agrees with the Texas Court of Criminal Appeals that "the record clearly shows that Davis' views would have prevented or substantially impaired the performance of her duties as a juror." *Cuevas v. State*, 742 S.W.2d 331, 335 (Tex.Crim.App.1987). Petitioner has failed to make a clear and convincing showing that the state court's elimination of prospective juror Davis was erroneous. Therefore, the Court finds that her exclusion from the jury was justified.

2. *The trial court's denial of Petitioner's challenge for cause to thirteen venire members violated the sixth, eighth, and fourteenth amendments.*

█ Petitioner asserts that his sixth, eighth, and fourteenth amendment rights were violated by the trial court when it denied his challenges for cause to thirteen specified potential jurors. He contends these veniremen were not qualified pursuant to *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and/or because they could not consider mitigating evidence during the punishment phase. Petitioner also believes some prospective jurors were ineligible because they would have held the state to a lower burden of proof on the probability Petitioner would commit further violent acts and on the issue of intent.

In Texas during the penalty phase of a capital murder trial the jury is given three special interrogatories. The death penalty may be imposed only if all three are answered in the affirmative. According to Petitioner there were ten veniremen who would have applied the law of the parties set forth in Texas Penal Code § 7.02 when answering the first punishment special issue. Petitioner believes these individuals were disqualified under *Enmund* and that the trial court's decision to deny his challenges forced him to use nine peremptory challenges and accept one juror which violated his eighth and fourteenth amendment rights.

The United States Supreme Court held in *Enmund* that a person who aids and abets a felony in the course of which a murder is committed by others cannot be sentenced to death absent a finding that he killed, attempted to kill or intended or contemplated that life would be taken or lethal force would be employed. *Id.* at 797, 102 S.Ct. at 3376. It is the Defendant's own conduct and not that of others that must be the basis for imposing the death penalty. *Id.* at 798, 102 S.Ct. at 3377. As a result, "a defendant could be *convicted* of a capital offense based on his conduct and that of his co-felons ... but he could only receive the death penalty based on his own conduct." *Cuevas v. State*, 742 at 342.

The first special issue asks the jury to decide "whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." Only when a jury determines Defendant's own conduct satisfies both parts of this special issue is an affirmative verdict possible.

During *voir dire* each veniremen was given the statute which provides for the law of parties. They were asked to apply it to a hypothetical bank robbery involving two individuals whereby one individual actually went into a bank with a gun and the other only drove the getaway car. In evaluating this fact scenario Petitioner believes that only by applying the law of the parties could an affirmative response be made to the first special issue. The Court disagrees.

The record shows that each person was given a slight variation of the hypothetical situation and the veniremen gave assorted reasons for answering yes to special issue one. The transcripts show they all demonstrated, unequivocally, that their answers were based on Petitioner's conduct alone and that they had not relied upon the law of parties. Accordingly, this Court finds Petitioner has failed to show bias or preju-

dice upon the part of any prospective juror and the trial court did not abuse its discretion by denying Petitioner's challenges based on *Enmund.*

Petitioner also alleges the trial court erred when it refused to grant his challenges to prospective jurors Fishman, Hluchan and Dunn all of which he believes demonstrated they could not consider certain factors in the mitigation of punishment. The record shows Petitioner used a preemptory challenge to strike venireman Fishman without first requesting that she be excused for cause. Under the procedural default doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), federal courts cannot grant habeas corpus relief to state prisoners if their claims are not reviewable in the state court due to default. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In addition, this Court is barred from federal habeas corpus review unless Petitioner can show good cause and actual prejudice for the default. *Bass v. Estelle,* 696 F.2d 1154, 1156–58 (5th Cir.) *reh. denied,* 705 F.2d 121 (5th Cir.), *cert. denied,* 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). Accordingly, Petitioner's challenge as to veniremember Fishman is barred.

■ Peremptory strikes were used by Petitioner to remove veniremen Hluchan and Dunn from the panel after his challenges for cause were denied by the trial court. Petitioner contends denial of his challenges for cause as to these individuals was also erroneous based on their responses to questions involving a hypothetical situation in which one participant in a bank robbery had a limited mental capacity and was under the control and domination of the individual who engineered the robbery. The record shows venireman Hluchan did not believe these factors justified the commitment· of capital murder and therefore they were not mitigating factors relating to punishment. Venireman Dunn believed these factors would "not necessarily" be mitigating since "if one person could easily fall under the control and domination of another person that would lead to them committing a violent crime, that perhaps

the probability of that occurring again could be high." (R. XXX:5099–5103).

The United States Supreme Court requires that in capital cases "the sentencer ... not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982) (emphasis in original). "Equally clear is the corollary rule that the sentencer may not refuse to consider or be precluded from considering "any relevant mitigating evidence." *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986) (quoting *Eddings, supra,* 455 U.S. at 114, 102 S.Ct. at 877). However, *consideration* of the mitigating evidence is all that is required. The sentencer remains free to give this evidence whatever weight he feels is proper in the mitigation of punishment. *Eddings,* 455 U.S. at 114–15, 102 S.Ct. at 876–77. Nothing in the answers given by Hluchan and Dunn indicate they would not take into account the mitigating factors. Therefore the Court finds these two individuals were qualified to serve on the jury and the trial court properly denied Petitioner's challenges.

■ Finally, Petitioner objects to the trial court's refusal to grant his challenge for cause against venireman Cullather. According to Petitioner, Cullather did not understand the term "probability" contained in special issue number two. He was quizzed extensively on what he thought this word meant and the record contains at least a dozen of his definitions. Petitioner eventually made a challenge for cause, which was denied, forcing him to use a peremptory challenge against Cullather.

The trial court noted that Cullather "equate[d] the word probability with more likely than not." (R. XXVIII:4764). The word "probability" is not defined by statute; therefore, the dictionary definition should be applied which reflects the common meaning of the term. The record shows that the definitions given by venire-

man Cullather were equivalent to the common definition of the term. Thus, the trial court did not abuse its discretion by denying Petitioner's challenge for cause.

3. *The trial court's refusal to instruct the jury at the penalty stage that "the Texas law of parties does not apply to its determination of special issue number one on punishment," violated the sixth, eighth and fourteenth amendments.*

Petitioner contends that the trial court's refusal to give the jury a specific instruction that the law of parties does not apply to the first punishment issue allowed the jury to consider the actions of others. This omission allegedly denied him the right to an individualized sentencing proceeding and failed to limit the jury's consideration to evidence related to his deliberateness.

A careful review of Petitioner's argument shows that it deals only with mitigating factors and the fact that a defendant must be permitted to present mitigating evidence for the jury to consider when deciding punishment. Petitioner does not contend he was not permitted to present mitigating evidence or that the jury was not allowed to consider it. His arguments fail to present any facts demonstrating he was denied an individualized sentencing. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard,* 691 F.2d 796, 799 (5th Cir.1982), *cert. denied,* 461 U.S. 951, 103 S.Ct. 2419, 77 L.Ed.2d 1310 (1983) (citations omitted). As a result, this Court finds that this claim lacks merit.

Petitioner also contends that the Court of Criminal Appeals erred when it failed to apply the dictum found in *Green v. State,* 682 S.W.2d 271, 287 n. 4 (Tex. Crim.App.1984) which says "[u]pon request by a capital murder defendant or the State, the jury is to be instructed at the punishment phase that only the conduct of the defendant can be considered at the punishment phase, and that the instructions pertaining to the law of parties given at the guilt stage cannot be considered." In reviewing a habeas petition this Court cannot consider whether the Court of Criminal Appeals acted pursuant to its own interpreta-

tion of state law. *Welch v. Butler,* 835 F.2d 92, 94 (5th Cir.), *cert. denied,* 487 U.S. 1221, 108 S.Ct. 2877, 101 L.Ed.2d 912 (1988).

A review of the record shows that the first special issue clearly focused on the conduct of Ignacio Cuevas. During this phase of the trial no mention was made of Petitioner's co-conspirators. In addition, defense counsel expressly informed the jury that the law of the parties has nothing to do with punishment and that they were to judge the culpability of Petitioner on his acts alone. Although this is not a substitute for a proper jury charge this Court finds that no specific instruction was needed to insure the answer to the first issue would be based solely on the culpability of petitioner.

It is Petitioner's belief, based on *Enmund v. Florida,* that without this instruction the jury could have based its answer to the first special issue on acts of his co-defendants. As discussed previously, this allegation is not supported by the record. The first punishment special issue restricts the jury's attention to the conduct of a specific defendant and whether that individual had an exception that death could occur as a result of his acts. *See* Tex.Code Crim.Proc.Ann. art. 37.071(b)(1). Upon review, the jury could not have been misled into believing the law of the parties applied to the special issues presented during the punishment phase. Therefore, the Court finds the trial court's denial of the instruction requested by Petitioner did not violate *Enmund.*

Finally, Petitioner alleges the Court of Criminal Appeals applied an inappropriate standard of review when it found the failure to give the requested instruction was harmless error. The federal writ of habeas corpus can be issued only when a conviction was obtained in violation of a provision of the United States Constitution. The standard of review utilized by a state court is a matter of state law and is not a basis for federal habeas corpus review. "Federal courts hold no supervisory authority over state judicial proceedings and

may intervene only to correct wrongs of Constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). Since the Court finds the decision of the Court of Criminal Appeals did not amount to a Constitutional defect Petitioner cannot obtain relief on this ground.

4. *The Texas Court of Criminal Appeals violated basic principles of fundamental fairness, due process and equal protection guaranteed by the U.S. Constitution when it affirmed the exclusion of certain veniremen, refused to apply the rule of Green and applied the harmless error rule.*

In essence this claim is based on Petitioner's belief that the state court misapplied state law. As discussed previously, whether the correct rules were applied by the trial court and properly approved by the Court of Criminal Appeals is not properly before the Court. This Court "may intervene only to correct wrongs of a constitutional dimension." *Id.* After careful review the Court finds these allegations do not rise to constitutional proportions and therefore will not be addressed.

5. *There was insufficient evidence to support the jury's finding that Petitioner's conduct caused the death of the deceased deliberately or with the expectation that death would result.*

▆▆ The Petitioner's claim regarding the sufficiency of the evidence is being raised for the first time in this application for habeas corpus. According to Texas law, challenges to the sufficiency of the evidence must be raised on direct appeal and failure to do so constitutes a waiver. *Ex parte Williams*, 703 S.W.2d 674, 678 (Tex.Crim.App.1986). This court is "barred from considering [this issue] on federal habeas corpus review unless [Petitioner] can show 'good cause' for his non-compliance with state procedures and actual 'prejudice' resulting from the alleged constitutional violation." *King v. Lynaugh*, 868 F.2d 1400, 1402 (5th Cir.1989). The record shows that the state habeas court's reliance on procedural default was unambiguous and as a result it is not necessary to address the recent holding of *Harris v.*

*Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989).

Since this Court finds Petitioner failed to make the required showing of "good cause" for his non-compliance with state procedures it is barred by *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977) from considering this issue on federal habeas review. Therefore, it is not necessary to reach the issue of prejudice.

6. *The Texas capital sentencing scheme, as applied, violated Petitioner's right to be free from cruel and unusual punishment in violation of the eighth and fourteenth amendments.*

▆▆ In this claim Petitioner asserts that the Texas sentencing statute, as applied in his case, is unconstitutional. Although there is no real development of this contention, it appears Petitioner is alleging the trial court failed to provide the jury with the constitutionally required opportunity to consider mitigating evidence in determining whether to impose the death penalty.

In *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) the United States Supreme Court held that,

> the Eighth and Fourteenth Amendments require that the sentencer, ... not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. *Id.* at 604, 98 S.Ct. at 2964 (emphasis original).

The Supreme Court has also held that the "Constitution requires that death penalty statutes be structured so as to prevent the penalty from being administered in an arbitrary and unpredictable fashion." *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987). A review of the record reveals that the charge presented to the jury did not preclude consideration of mitigating factors.

During the punishment phase of the trial defense counsel directed the jury's attention to evidence previously presented concerning Petitioner's education and IQ which is clearly relevant to the first special

issue. Counsel also referred to evidence introduced in an attempt to demonstrate Cuevas was incapable of independent thought and that he was dominated by the leader of the attempted escape. This evidence is relevant to both the first and second punishment issues. Finally, Petitioner called as witnesses a former death-row inmate whose sentence had been commuted to life and who has been successfully rehabilitated, and a priest whose testimony also focused on rehabilitation. This evidence relates to the second special issue which asks whether there is a probability that a defendant will commit future violent acts.

The Supreme Court recently addressed the issue of mitigating evidence during the punishment phase in *Franklin v. Lynaugh*, 823 F.2d 98 (5th Cir.1987), *aff'd*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155. The argument was made in *Franklin* that because "there was no specific instruction there was no opportunity for the jury to give independent mitigating weight to his prison record." *Id.* at 2329. The Court ruled that the jury's consideration of Franklin's prison record was not improperly limited.

> [T]he Texas capital sentencing system has been upheld by this Court, and its method for providing for the consideration of mitigating evidence has been cited repeatedly with favor, precisely because of the way in which the Texas scheme accommodates *both* [the concerns of *Lockett* and *Brown*]. ... Simply put, we have previously recognized that the Texas Special Issues adequately allow the jury to consider the mitigating aspects of the crime and the unique characteristics of the perpetrator, and therefore sufficiently provide for jury discretion.

*Id.* 108 S.Ct. at 2331–32 (emphasis in original) (citations omitted). Therefore, this Court must reject Petitioner's allegation that the Texas sentencing statute is unconstitutional.

7. *The Court should hold an evidentiary hearing.*

 Petitioner asserts that this Court must hold an evidentiary hearing before deciding whether the Texas capital sentencing statute is unconstitutional be-

cause the state courts' findings are not entitled to a presumption of correctness under 28 U.S.C. § 2254(d). For a federal evidentiary hearing to take place, Petitioner must allege facts, which, if proved, would entitle him to relief. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Wilson v. Butler*, 825 F.2d 879, 880 (5th Cir.1987), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988). This Court is not required to "blindly accept speculative and inconcrete claims," *Lavernia v. Lynaugh*, 845 F.2d 493, 501 (5th Cir.1988), or to conduct a hearing where the record is complete and all that are raised are legal claims which can be resolved without additional evidence. *Bridge v. Lynaugh*, 838 F.2d 770, 776 (5th Cir.1988).

The Court finds that Petitioner's allegations are legal in nature and he has failed to specify specific errors in the state fact-finding process. There is no reason for this Court to disregard the presumption of correctness that attaches to them. 28 U.S.C. § 2254(d). Therefore, a hearing is not required. Accordingly, it is

ORDERED that Respondent's motion for summary judgment is GRANTED. It is further

ORDERED that Petitioner's writ of habeas corpus is DENIED.