IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00120-CR

 

Miguel Arciba,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 31884CR

 



MEMORANDUM  Opinion










 

            Miguel Arciba was convicted of capital murder by a
jury.  Tex. Pen. Code Ann. §
19.03 (Vernon 2003).  He was sentenced to a mandatory sentence of life
imprisonment in the Texas Department of Criminal Justice – Institutional
Division.  Tex. Pen. Code Ann. §
12.31 (Vernon 2003).  Arciba raises ten issues on appeal.  Arciba complains
that the trial court erred in denying his motion to quash his indictment.  He
further complains that the trial court erred in denying his motion to suppress
based on involuntariness due to religious coercion, the totality of the
circumstances, direct promises, threats, and misrepresentations made by law
enforcement, violation of his right to counsel, improper Miranda
warnings, and an illegal arrest, search, and seizure.  Arciba also complains
that the trial court erred in failing to suppress hair comparison analysis
evidence and DNA evidence.  Because we find that the trial court did not err,
we affirm the judgment of conviction.

Factual Background

            Doris Phillips was reported missing from her rural residence on July
25, 2006.  The back door to her residence had been left open, her television
was left on, and there were other signs that she had departed suddenly, and
likely, unwillingly.  A shotgun and a jewelry box were also determined to be
missing from the home.

            During the investigation and search
for Mrs. Phillips, Arciba was interviewed at the sheriff’s office on August 7,
2006.  Arciba admitted to knowing Mrs. Phillips and speaking with her about
buying a pickup and camper.  Arciba voluntarily came to the sheriff’s office
for that interview and left when it was over.  

            On September 2, 2006, the missing
shotgun was found by chance at a flea market in Canton.  Arciba was determined
to have been the person who sold the shotgun to the vendors at the flea
market.  Four law enforcement officers went to Arciba’s residence at some time
after 7:00 a.m. on the morning of September 3, 2006 because they could not
reach Arciba by phone and had no other way to contact him.  Arciba left with
the officers to be questioned further about the shotgun and rode in a law
enforcement vehicle.  One of the officers drove Arciba’s vehicle to the
sheriff’s office because the officers had smelled alcohol in Arciba’s apartment
and were concerned about his sobriety.  Arciba was told by the officers that he
was not under arrest at that time.

            At the station, after receiving his Miranda
warning and waiving his constitutional rights,[1]
Arciba initially denied any knowledge of the shotgun.  After the investigators
informed Arciba that they knew he had been in possession of the shotgun, he
changed his story and stated that he had purchased the shotgun from another
person in a written statement.  A warrant was then procured for Arciba’s arrest
for burglary of a habitation.  Arciba was arrested while he was still at the
sheriff’s department in the evening of September 3, 2006.

            Arciba was taken before a magistrate
at approximately 6:30 a.m. on September 4, 2006, and bond was set on the
burglary charge.  On September 5, 2006, a search warrant was issued for Arciba’s
vehicle which was stored at the sheriff’s department, having been impounded
when Arciba was arrested.

            Arciba was questioned for varying
periods of time daily, portions of which were videotaped.  Arciba voluntarily
participated in two polygraph examinations.  His next written statement was
made on September 6, 2006, in which he admitted to being inside Mrs. Phillips’s
house and stealing the shotgun and jewelry box.

            Toward the end of the week of
questioning, different law enforcement officers would pray with Arciba at the
beginning and end of each period of questioning.  One in particular, Chief
Sullins, had known Arciba’s family for many years and knew that Arciba’s mother
was in poor health.  The officers instigated the prayers, which included prayer
for Arciba’s mother and for the return of Mrs. Phillips.

            On September 7, 2006, Chief Sullins
was about to begin questioning Arciba.  Sullins advised Arciba that as they had
discussed the previous day, he had visited Arciba’s mother the night before. 
After praying with Arciba, Chief Sullins showed him a photograph of his mother
and a photograph of Mrs. Phillips.  Upon seeing these photos, Arciba had a
medical episode of some type where he collapsed, fell out of his chair onto the
floor, and seemed to shake for a short period of time.  Emergency medical
attention was given to Arciba, and questioning ended for that day.

            Arciba made two written statements on
September 8, 2006.  The first was made at 4:14 p.m., wherein Arciba admitted to
being present in Mrs. Phillips’s house with another person named Israel Valdez
when Mrs. Phillips was injured.  Arciba claimed that Valdez had pushed Mrs.
Phillips hard which caused her to fall.  Arciba picked her up and put her in a
chair.  Arciba went outside until Valdez called him to come back inside. 
Arciba saw Valdez walking with Mrs. Phillips to Arciba’s car in the driveway. 
Arciba took the shotgun and jewelry box.  Valdez told Arciba he was going to
leave Mrs. Phillips at a white house.  Arciba demanded to be left at a nearby
bar, and Valdez dropped him off.  Arciba contends that Mrs. Phillips was still
breathing at that point.  Valdez came back to the bar later and then after some
time, left.

            Sometime after this statement was
made, law enforcement officials took Arciba to his mother’s house.  Arciba had
been expressing concern about his mother to law enforcement at various points
during the questioning.  Arciba’s sister was present as well.  At first, Arciba
did not want to go in and upset his mother, but ultimately did so.  Two
Spanish-speaking officers went in as well and listened to the conversation. 
Arciba’s mother told Arciba to tell the police the truth.  Arciba and his
mother were both very emotional at this meeting.

            Arciba then asked for two specific
investigators to come to him and that he would take them to where Mrs.
Phillips’s body was located.  Arciba led the investigators to a white house
where Mrs. Phillips’s badly decomposed body was located.  Upon returning to the
sheriff’s office, he made yet another written statement wherein he added
details such as what Mrs. Phillips was wearing and that Valdez had told him
that he was going to leave the body at the white house near Bardwell where her
body was ultimately found.  

            During the search of Arciba’s car, a
knife with blood on it, a bracelet later determined to belong to Mrs. Phillips,
and some gray hairs were located in the vehicle.  Through DNA testing, the
blood and hairs were determined to match Mrs. Phillips’s DNA. 

            Arciba filed multiple motions to suppress
his statements and the evidence discovered in the vehicle.  After a hearing,
the trial court denied the motions and made written findings of fact and
conclusions of law.  We will later address those findings as relevant to the
disposition of the appeal.

Motion to Quash the Indictment

            In his first issue, Arciba complains
that the trial court erred in denying his motion to quash his indictment.

Standard of Review

            The Court of Criminal Appeals has
recently reiterated the standard of review for a motion to quash an indictment:

The sufficiency of an indictment is a question of
law and is reviewed de novo.  State v. Moff, 154 S.W.3d 599, 601 (Tex.
Crim. App. 2004) (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997)).  The right to notice is set forth in both the United States and
Texas Constitutions.  See U.S. Const.
amend. VI; Tex. Const. art. I, §
10.  In addition, the Texas Code of Criminal Procedure provides guidelines
relating to the sufficiency of an indictment.  See, e.g., Articles 21.03,
21.04, and 21.11.  Thus, the
indictment must be specific enough to inform the defendant of the nature of the
accusations against him so that he may prepare a defense.  Moff, 154
S.W.3d at 601.  However, the due-process requirement may be satisfied by means
other than the language in the charging instrument.  Kellar v. State,
108 S.W.3d 311, 313 (Tex. Crim. App. 2003).  When a motion to quash is
overruled, a defendant suffers no harm unless he did not, in fact, receive notice
of the State's theory against which he would have to defend.  Id.; see
also Art. 21.19 ("An indictment shall not be held
insufficient, nor shall the trial, judgment or other proceedings thereon be
affected, by reason of any defect of form which does not prejudice the
substantial rights of the defendant").

 

Smith v. State, No. AP-75,479, 2009 Crim. App. LEXIS 527 at *8 (Tex. Crim. App. May
6, 2009).

The Indictment

Arciba complains that the trial court should have
quashed the indictment in his case for lack of specificity regarding the
specific acts he is alleged to have committed, more specifically, the multiple
manners and means that were alleged in the indictment.  The indictment stated
in part that Arciba had caused the death of the victim “by striking her with a
hand, a foot or an object unknown to the Grand Jury, by striking, cutting or
stabbing her with a knife or other object unknown to the Grand Jury, by pushing
or shoving her down or into an object unknown to the Grand Jury, or by manner
and means unknown to the Grand Jury . . . .”

An indictment may allege the several ways and
means by which the proof suggests a homicide was committed.  Zanghetti
v. State, 618 S.W.2d 383, 386 (Tex. Crim. App. [Panel Op.] 1981).  An indictment for murder may, in a single count, allege
jointly different means of killing without rendering the indictment
duplicitous.  Gentry v. State, 356 S.W.2d 793 (Tex. Crim. App. 1962).  Further,
an indictment alleging several means of killing in the same count of the
indictment, one of which is "in some manner and by some means, instrument
or weapon to the grand jury unknown" has been found not to be improper.  Helmus
v. State, 397 S.W.2d 437, 439-440 (Tex. Crim. App. 1965).  We do not find
error in the trial court’s denial of Arciba’s motion to quash the indictment. 
Arciba’s first issue is overruled.

Motions to Suppress

            Arciba filed multiple motions to
suppress his “admissions or confessions” as well as the hair and DNA evidence
found in his vehicle which linked him to the victim.

Standard of Review on Motion to Suppress

            The trial court is the "sole and
exclusive trier of fact and judge of the credibility of the witnesses" and
the evidence presented at a hearing on a motion to suppress, particularly where
the motion is based on the voluntariness of a confession.  Delao v. State,
235 S.W.3d 235,
238-39 (Tex. Crim. App. 2007); Green
v. State, 934 S.W.2d 92, 98-99
(Tex. Crim. App. 1996).  Additionally, given this vital role, great deference
is accorded to the trial court's decision to admit or exclude such evidence,
which will be overturned on appeal only where a flagrant abuse of discretion is
shown.  Montanez v. State, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Alvarado v. State,
912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  We afford almost total deference
to the trial court’s determinations of historical facts, especially when those
determinations involve assessment of witness credibility and demeanor.  See
Masterson v. State, 155 S.W.3d 167, 170 (Tex. Crim. App. 2005).

Illegal Arrest

            Arciba complains that the actions
of law enforcement escorting him from his home constituted an illegal arrest
and that his car keys were unlawfully seized by law enforcement at that time. 
While Arciba describes his version of events, there is no authority and very
little argument cited by Arciba to support an unlawful seizure.  We find this
portion of the issue is inadequately briefed, and therefore, is waived.  See
Tex. R. App. P. 38.1(i).  See
also Wyatt v. State, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000).  

            Arciba contends in
his brief that the four law enforcement officers appeared at his residence at
an unreasonable hour, placed him in handcuffs, took his car keys without his
consent from his niece who was also present, and forced him to go to the
sheriff’s department with them.  Yet, Arciba concedes that the handcuffs were
removed prior to his entering the police vehicle.  Arciba did admit that the
officers told him he was not under arrest in his residence.  Arciba’s niece,
who was also present, testified that Arciba was handcuffed by law enforcement who
took the keys from her without asking for consent.

            Each of the four law
enforcement officers that were present that morning at Arciba’s residence
testified at the suppression hearing.  Their testimony was that they came to
Arciba’s residence sometime after 7:00 a.m. on September 3, 2006 because they
had no other way to contact him.  A person other than Arciba answered the door
to the residence.  The officers asked to speak with Arciba.  He was sleeping in
a back bedroom.  Arciba came out of the bedroom and the officers asked him to
accompany them to the sheriff’s department for some questioning.  Arciba was
allowed to change clothes prior to their departure.  Arciba’s apartment had a
strong smell of alcohol and Arciba had been out drinking the night before until
3:30-4:00 a.m.  The officers were concerned for Arciba’s ability to safely
drive himself, so one of the officers volunteered to drive Arciba’s car so that
Arciba would have a way to come home after the questioning.  Each officer
denied handcuffing Arciba at any time.  Arciba willingly gave them his car
keys.  Arciba voluntarily traveled with the officers and rode in the front
passenger seat of one of the officers’ vehicles.  

            The trial court made
the following findings of fact:

·                   
The law enforcement officers
went to Arciba’s residence to contact Arciba to interview him related to his
possession of the shotgun in August, 2006.

 

·                   
The investigators requested
Arciba to accompany them to the sheriff’s office regarding the missing
shotgun.  The investigators detected an odor of alcohol about Arciba.  Arciba
voluntarily agreed to accompany the officers and rode with an investigator.

 

·                   
Testimony that Arciba was
handcuffed and was placed under arrest at the time he accompanied the
investigators was found to be not credible and not true.

 

·                   
A red 1997 Ford Escort vehicle
was identified as a vehicle commonly used by Arciba.  It was driven to the
sheriff’s office by an investigator so that Arciba would have the means to
leave at the end of the interview.

 

As the trial court is the sole judge of the
credibility of the witnesses and the weight of their testimony, we conclude the
trial court's findings and conclusions are supported by the record.  See
Wyatt, 23 S.W.3d at 23; Penry, 903 S.W.2d at 744.  We overrule
Arciba’s issue eight.

Unlawful Search

            Arciba complains that the entry of law enforcement into Arciba’s
residence without a warrant, the taking of his keys, and a search of his
vehicle he alleges was undertaken enroute to the sheriff’s office constituted
an illegal search.  However, beyond some general citations regarding inventory
searches of vehicles and that an unconsented police entry into a residence is a
search, Arciba makes no argument and cites no authorities as to what the search
consisted of, in what manner it was illegal, or what evidence should be
suppressed as a result.  We will not make Arciba’s arguments for him and hold
the allegation to be inadequately briefed and, therefore, issue seven is waived
and overruled.  See Tex. R. App.
P. 38.1(h) and (i).  Wyatt v. State, 23 S.W.3d at 23 n.5.  

Voluntariness of Confession

            Arciba complains in issues two,
three, five, and six that for various reasons, the confessions he made were
involuntary and should not have been admissible in his trial.  Issue two
complains that the police used religious appeals to coerce a confession.  Issue
three complains that the totality of the circumstances surrounding the
interrogation were coercive and caused Arciba’s will to be overborne, which
should render his confessions involuntary and therefore inadmissible.  Issue
five complains that direct promises, misrepresentations, and threats by law
enforcement against Arciba rendered his “statements and admissions”
inadmissible.  Issue six complains that the Miranda warnings given to
him were insufficient and therefore resulted in Arciba involuntarily waiving
his rights.

            We note that only in
issue three in Arciba’s brief does Arciba make any reference to what evidence
he complains of as being wrongfully not suppressed by the trial court, the two
written statements he made on September 8, 2006.  Arciba also mentions only in
issue two that all “fruits” of the coerced statements should be suppressed as
well, but never defines what those fruits are said to encompass.  We therefore
limit our analysis of the “fruits” to the two written statements Arciba gave to
law enforcement on September 8, 2006.  The suppression of any other statement
or evidence is inadequately briefed, and therefore, waived.  See Tex. R. App. P. 38.1(h) and (i).  See
also Walder v. State, 85 S.W.3d
824, 828 (Tex. App.—Waco 2002, order) (per curiam).

            The determination of whether a
confession is voluntary is based on an examination of the totality of
circumstances surrounding its acquisition.  Wyatt v. State, 23 S.W.3d
18, 23 (Tex. Crim. App. 2000) (citing Penry v. State, 903 S.W.2d
715, 744 (Tex. Crim. App. 1995)).  At a suppression hearing, the trial court is
the sole judge of the credibility of witnesses and the weight of their
testimony.  Id.  Therefore, we will not disturb the trial court's
findings if those findings are supported by the record.  Id.  We will
only consider whether the trial court properly applied the law to the facts.  Id.

Religious Coercion

            Arciba’s issue number two complains
that “The Religious Appeals by Law Enforcement and All Fruits Thereof, were the
results of Coercion and Thus Involuntary and should therefore have been
supressed [sic].”  Within this point of error, Arciba avers that his Miranda
waivers were immaterial because of the coercion by law enforcement, and that
the deceit and trickery used by the law enforcement officials deprived Arciba
of the ability to make an unconstrained, autonomous decision to confess. 
Further, Arciba contends that the trial court erred in not suppressing the
“fruits” of Arciba’s statements, with no reference to what those “fruits” are.

            The trial court found that officers
prayed with Arciba during several interviews, and that the last interview with
Arciba where two law enforcement officers prayed with Arciba was not an
interrogation.  The trial court did not otherwise address the prayers in its
findings of fact, but in its conclusions of law stated that “praying with the
defendant was not coercion, duress or undue influence so as to cause him to
give a false statement.”  

            We have located no Texas cases dealing
with the issue of religious coercion.  The trial court viewed some of the
prayers on the videos presented at the suppression hearing.  As the determiner
of the credibility of the witnesses, the trial court personally observed the
testimony of the law enforcement officers and Arciba.  Therefore, we defer to
the trial court’s findings that the prayers were not coercive in nature.  See
Wyatt, 23 S.W.3d at 23; Penry, 903 S.W.2d at 744.  The United
States Fifth Circuit Court of Appeals made a similar ruling in a Louisiana state case whereby an officer prayed with a defendant for about three hours, during
and after which the defendant made several incriminating statements.  See
Welch v. Butler, 835 F.2d 92, 95 (5th Cir. La. 1988), cert. denied, 487 U.S. 1221, 108 S. Ct. 2877, 101 L. Ed. 2d 912 (1988) (police using religious conviction to attempt to elicit
confession not coercive under Fifth and Fourteenth Amendments of U.S.
Constitution).  We overrule issue two.   

Totality of the Circumstances

            Arciba’s issue number three complains
that the totality of the circumstances show that any admissions or statements
made by Arciba were the result of his will being overborne and thus
involuntary.  "Voluntariness is decided by considering the totality of the
circumstances under which the statement was obtained."  Creager v.
State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997).  The ultimate question
is whether Arciba’s will was "overborne" by police coercion.  Id. at 856.  In answering this question, courts may consider various factors,
including the length of detention, incommunicado or prolonged detention,
denying a family access to a defendant, refusing a defendant's request to
telephone a lawyer or family, and physical brutality.  Nenno v. State,
970 S.W.2d 549, 557 (Tex. Crim. App. 1998), overruled on other grounds,
State v. Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999).

            Arciba contends that the length of the
interrogations over the span of six days led to his exhaustion and health
issues and that the misleading nature of the questioning by law enforcement
renders the two statements he made on September 8, 2006 as involuntarily given
due to the coercive atmosphere in which they transpired.

            The trial court, in its findings,
stated that the length of interrogations was not unduly long or so onerous as
to constitute coercion, duress, or undue influence.  Further, the trial court
found that Arciba was allowed breaks, given the opportunity for meals, allowed
the use of tobacco, and allowed to sleep.  Additionally, the trial court found
that the interviews were generally amicable and without coercion, duress, or undue
influence, that Arciba was repeatedly given the warnings required by art. 38.22
of the Texas Code of Criminal Procedure, that he knew and understood those
rights and voluntarily waived them, and that Arciba willingly engaged in
discussions in an attempt to convince the investigators that he was not
responsible for the offense.

            As we defer to the trial court’s
credibility determinations, we cannot say the trial court erred by finding that
Arciba’s oral statements were voluntarily given.  See Wyatt, 23 S.W.3d
at 23; Penry, 903 S.W.2d at 744.  We overrule issue three.

Direct Promises, Misrepresentations, and Threats

            Arciba complains in issue five that
the law enforcement officers engaged in deception by using his mother as an
“extrinsic consideration.”  Later, he alludes to the idea that this constituted
“a plausible threat to pray [sic] on the frailty and health of his mother whom
was so dear.”  However, Arciba presents no authority or references to the
record to support his position.  Therefore, this portion of this issue is
inadequately briefed, and therefore, waived.  See Tex. R. App. P. 38.1(h) and (i).

Next in this issue, Arciba contends that the
totality of the circumstances made his statement involuntary.  We have already
resolved this issue against Arciba in our discussion of issue number three. 
Then, Arciba complains about involuntary statements, admissions, and
confessions resulting from one law enforcement officer’s false representation
that whatever Arciba said would stay in the room and no one would know what he
said.  This transpired during the second polygraph session on September 8,
2006, which was videotaped without the knowledge or consent of the polygraph
examiner, in violation of the policies of the United States Secret Service
which conducted the polygraph.  Arciba then refers back to the issue of
references to his mother and her poor health.  Arciba does not explain what
effect, if any, these alleged issues had on him other than as an extension of
his totality argument.  We cannot determine with any degree of certainty what
this multifarious issue is complaining of and what relief Arciba is requesting
from it.  See Tex. R. App. P.
38.1(i).  Therefore, it is waived.  Issue number five is overruled.

Waiver of Rights

            Arciba complains that he was given insufficient Miranda
warnings prior to giving an oral or written confession, which rendered the
waiver involuntary.  See Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).  Arciba mentions the Texas Code of Criminal Procedure
in the heading of this issue but does not refer to it in the body of his
argument.  Therefore, we will only construe his complaint as a failure to give
proper Miranda warnings.  We also note that Arciba does not refer to any
particular oral statements; therefore, we will only discuss the written
statements.  See Tex. R. App. P.
38.1(i).

            Arciba contends that he was unable to
read the written Miranda warnings which were listed at the top of each
page of his written statements because he did not have his reading glasses. 
Arciba does not deny that he placed his initials on each line next to each
right that is required to be given and waived by Miranda on each of the
four written statements taken that week or that he signed each page of the
written statements at the bottom.  Arciba makes one blanket statement that he
“was unable to read and fully understand the Waiver of Rights documents with Miranda
warnings on statement giving [sic] September 3, 2006, September 6, 2006,
September 8, 2006 and September 9, 2006.”  Arciba makes no citations to the
record to advance this argument.  

Arciba does, however, quote a section of testimony
shown on a video of the questioning of September 7, 2006, whereby Chief Sullins
gave Arciba his reading glasses to review a waiver of rights statement.  No
written statement or admission was made on that day by Arciba.  In addition,
Arciba admitted at the suppression hearing that he knew that he had each of the
rights enumerated in Miranda prior to signing the written statements, that
he had initialed each line next to each one as listed after receiving them, and
that he signed those waivers voluntarily.  The trial court found that Arciba
was not prevented from reading documents, and when given reading glasses, he
read documents without complaint.  

The trial court’s findings of fact regarding this
issue for each written statement were that “Arciba knew he had a right to an
attorney, knew he did not have to make a statement, was advised of his
statutory rights, freely and voluntarily provided the statement, and was not
under duress or subject to coercion.”

Arciba also argues that an investigator’s failure
to read the rights verbatim to him on one occasion renders the waivers
insufficient.  The occasion Arciba advances was prior to his taking a polygraph
examination on September 8, 2006, and no written statement was made in that
examination.  However, Arciba does not explain how this failure, if any,
rendered any statement as involuntary.  Further, the trial court’s findings are
supported by the record.  See Wyatt, 23 S.W.3d at 23; Penry,
903 S.W.2d at 744.  Issue number six is overruled.

Denial of Right to Counsel

            Arciba complains in issue four that the trial court erred by not
suppressing his statements and admissions because Arciba requested an attorney
during his first interview.  Arciba points to no specific statements or
admissions that he made that he now complains about beyond the statement that
“appellant challenges the trial court’s finding that he reinitiated
conversation with police.” 

Arciba’s heading of his fourth issue mentions this
asserted violation as one encompassing the Fifth and Sixth Amendments to the
United States Constitution.  Arciba makes no further reference to the Sixth
Amendment.  We will not make Arciba’s arguments for him and hold this
allegation to be inadequately briefed, and therefore, waived.  See Tex. R. App. P. 38.1(h) and (i).  Wyatt
v. State, 23 S.W.3d at 23 n.5.

Regarding Arciba’s Fifth Amendment claim, Arciba
testified at the suppression hearing that he was not given his Miranda
warnings and that he requested an attorney at the first interview with law
enforcement on September 3, 2006, but that his request was ignored.  The
officers involved in the questioning of Arciba each testified that Arciba was
repeatedly given his Miranda warnings, including prior to the beginning
of the questioning on September 3, 2006.  The officers further testified that
Arciba never invoked his right to counsel during the entire time he was
questioned.  

The trial court made the following findings of
fact regarding September 3, 2006 and Arciba’s request for counsel: 

·                   
Arciba was interviewed and
provided oral and written statements.  Arciba voluntarily provided the
statements and was not in custody.  Arciba was also advised of his rights. 
There was no coercion, duress, and no request for an attorney regarding the
voluntary statements.  Testimony by Arciba that he requested an attorney was
determined not credible and not true.

 

As the trial court is the sole judge of the credibility
of the witnesses and the weight of their testimony, we conclude the trial
court's findings and conclusions are supported by the record.  See Wyatt,
23 S.W.3d at 23; Penry, 903 S.W.2d at 744.  We overrule issue four.

Admissibility of Scientific
Evidence

Arciba also contends in issues nine and ten that
the scientific evidence found during the investigation should have been
suppressed by the trial court.  Texas Rule of Evidence 702 provides: "If
scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education
may testify thereto in the form of an opinion or otherwise.”  Tex. R. Evid. 702.  The
trial court's task in assessing admissibility under Rule 702 is to determine
whether the scientific evidence is sufficiently reliable and relevant to help
the jury in reaching accurate results.  Hartman v. State, 946 S.W.2d 60,
62 (Tex. Crim. App. 1997); Kelly v. State, 824 S.W.2d 568, 572 (Tex.
Crim. App. 1992).  To be considered reliable, evidence
based on a scientific theory must satisfy three criteria: (1) the underlying
scientific theory must be valid; (2) the technique applying the theory must be
valid; and (3) the technique must have been properly applied on the occasion in
question.  Hartman, 946 S.W.2d at 62; Kelly, 824 S.W.2d at 573.  Kelly
also provided a list of non-exclusive factors that could
affect a trial court's determination of reliability.  These are: (1) the extent
to which the underlying scientific theory and technique are accepted as valid
by the relevant scientific community, if such a community can be
ascertained; (2) the qualifications of the expert(s) testifying; (3) the
existence of literature supporting or rejecting the underlying scientific
theory and technique; (4) the potential rate of error of the technique; (5) the
availability of other experts to test and evaluate the technique; (6) the
clarity with which the underlying scientific theory and technique can be
explained to the court; and (7) the experience and skill of the person(s) who
applied the technique on the occasion in question.  Kelly, 824 S.W.2d at
573.

Before novel scientific
evidence may be admitted under Rule 702 the proponent
must persuade the trial court, by clear and convincing evidence, that the
evidence is reliable and therefore relevant.  Kelly, 824 S.W.2d at 573.

Hair Evidence

Arciba asserts that the trial court erred in
admitting the testimony of the State's expert, Juan Rosas, who is a forensic
chemist and hair-comparison analyst with the Texas Department of Public Safety.
 Rosas compared the hair retrieved from the victim to the hair removed from
Arciba’s vehicle.  Arciba sought to prevent the jury from hearing the results
of this comparison because it is scientifically unreliable and because its
admission was more prejudicial than probative to Arciba.

The trial court held a hearing on Arciba’s motion
to suppress to determine the admissibility of Rosas’s testimony.  Rosas
testified that he had received his training in hair-comparison analysis at the
DPS headquarters in Austin.  Rosas had been a forensic chemist with DPS for
twenty-six years at the time of his testimony, and had been performing
hair-comparison analysis since 1984.  In order to become a qualified
hair-comparison analyst he had to complete DPS training in forensic-hair
comparison and work on various hair-comparison cases under direct supervision.  Rosas
continues his training by taking courses offered by the FBI and DPS.  Rosas
explained how he tested the hair found in Arciba’s vehicle to the hair taken
from the victim's head.  He performed the test at the Austin DPS lab.  Rosas
testified that hair-comparison analysis is considered an accepted science
within the scientific community and that there is literature on this topic.  Persons
performing hair-comparison analysis follow the same test procedures.  When
making the hair-comparison analysis in this case, Rosas followed the same
techniques and procedures.  The results of his testing were peer reviewed as
they are in every case.  Hair-comparison analysis can be explained in court.

The trial court denied the motion to suppress the
hair-comparison analysis and allowed Rosas to testify before the jury.  Rosas
testified that the hairs found in Arciba’s vehicle were microscopically
consistent with those recovered from the victim.




Reliability

The State satisfied the three criteria stated in
the Hartman-Kelly decisions.  The proponent of the evidence testified
that the underlying scientific theory is valid and that the technique applying
the theory is valid; that the scientific community considers hair-comparison
analysis an accepted science; and that all hair-comparison analysts, including Rosas,
use the same scientific theory and technique when performing hair analysis.  Rosas
properly applied the technique in this case.  The scientific theory and
technique he used to perform the hair analysis are the same as those used by
other analysts.  There was evidence of Rosas's qualifications, experience, and
skill to perform the test, the existence of literature supporting the
underlying scientific theory and technique, the availability of other experts
to test and evaluate the technique, and the clarity with which the underlying
scientific theory and technique can be explained to the court.

Relevancy

Even if the proponent has
satisfied the Hartman-Kelly criteria, the trial court may exclude the
evidence if it determines that the probative value is outweighed by some factor
identified in Rule 403.  Tex. R. Evid. 403.  The hair-comparison
analysis is probative because it helps to show the similarity of the hair in
Arciba’s vehicle to the victim's hair.  The evidence is not unfairly
prejudicial, does not confuse the issues, does not mislead the jury, and is not
cumulative.  We hold that the evidence supports the trial court's findings and
that the court did not abuse its discretion by admitting Rosas's testimony.  We
overrule issue nine.

DNA Evidence

Arciba complains of the trial court’s error in
denying his motion to suppress the DNA testing completed on the knife and hairs
found in his vehicle because of the unlawful seizure of his person and his keys
and the unlawful search of the vehicle.  He further complains that the evidence
should have been excluded by Texas Rule of Evidence 403 in that the prejudicial
value of such evidence outweighs the probative value because of accuracy of
testing procedures.  

Arciba presents no authority in support of these
claims.  Therefore, this objection is inadequately briefed and presents nothing
for our review.  See Tex. R. App.
P. 38.1(h) and (i).  See also Walder v. State, 85 S.W.3d 824, 828
(Tex. App.—Waco 2002, order) (per curiam).  We overrule issue ten.

Conclusion

            We find that the trial court did not abuse its discretion in its
refusal to suppress evidence and in denying Arciba’s motion to quash the
indictment.  We affirm the judgment of the trial court.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice Reyna,
and

            Justice Davis

Affirmed

Opinion delivered and
filed December 30, 2009

Do not publish

[CRPM]









[1] Arciba was actually given the warnings enumerated
in Texas Code of Criminal Procedure art. 38.22, which also include the right to
terminate the interview at any time; however, Arciba couches his arguments
solely in terms of the requirements of Miranda v. Arizona.  Miranda v.
Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).  Therefore,
we refer to the warnings throughout this opinion as Miranda warnings.